1 | FRANK O'KANE (SBN 137370)
THE O'KANE LAW FIRM
2 | 16030 Ventura Blvd # 510
Encino, CA 91436
3 | Telephone: (818) 501-6100
Facsimile: (818) 501-6104
4 |

5 |            UNITED STATES DISTRICT COURT FOR THE

6 |              CENTRAL DISTRICT OF CALIFORNIA

7 |                  LOS ANGELES DIVISION

8 |                                    CV09-04900 RSWL (AMx)

9 | DENNIS A. GRAFF,                   Case No.:

10 |          Plaintiff,               COMPLAINT FOR:

11 |      vs.                          1) Breach of Written Contract;

12 | IVARI INTERNATIONAL, INC.,        2) Breach of Contract – California
                                         Commercial Code;
13 | EDWARD IVARI, AMY IVARI,
                                      3) Breach of Implied Warranty of
14 | DOES 1 through 10,                   Fitness;

15 |          Defendants              4) VIOLATION OF THE
                                         CALIFORNIA SONG-BEVERLY
16 |                                     WARRANTY ACT;

17 |                                   5) Breach of Implied Warranty of
                                         merchantability – California
18 |                                     Commercial Code.

19 |                                   6) Breach of Implied Warranty of
                                         merchantability – California Song-
20 |                                     Beverly Act;

21 |                                   7) Breach of Implied Warranty of
                                         Fitness for a Particular Purpose –
22 |                                     California Commercial Code and
                                         California Song-Beverly Act;
23 |
                                      8) BREACH OF THE FEDERAL
24 |                                     MAGNUSON-MOSS WARRANTY
                                         ACT;
25 |
                                      9) VIOLATION OF THE
26 |                                     CALIFORNIA CONSUMER LEGAL
                                         REMEDIES ACT;
27 |
                                      10) VIOLATION OF THE
28 |                                      CALIFORNIA UNFAIR BUSINESS
                                          PRACTICES ACT;

1

Complaint

)   11) VIOLATION OF THE
)   CALIFORNIA FALSE
)   ADVERTISING ACT;

)   12) VIOLATION OF THE
)   CALIFORNIA FALSE
)   ADVERTISING ACT – FRAUD AND
)   DECEIT;

)   13) VIOLATION OF THE
)   CALIFORNIA FALSE
)   ADVERTISING ACT – NEGLIGENT
)   MISREPRESENTATION;

)   14) FRAUD AND DECEIT;

)   15) NEGLIGENT
)   MISREPRESENTATION;

)   16) PROMISSORY ESTOPPEL;

)   17) UNJUST ENRICHMENT

)   18) DECLARATORY RELIEF

)   [DEMAND FOR JURY TRIAL]

## I. INTRODUCTION

1. This is a suit to collect money obtained from the Plaintiff through sale of a defective product and/or service to plaintiff. The suit seeks recovery for breach of contract, fraud, breach of warranties under the California Commercial Code, breach of the California Song-Beverly Act, breach of the federal Magnuson-Moss Warranty Act, violation of the California Consumer Legal Remedies Act, and violation of the California Unfair Business Practices Act, violation of the California False Advertising Act, Violation of the California Business and Professions Code 12024.6, and violation of the Federal Trade Commissions Act. The suit seeks recovery of actual damages, treble damages, attorney fees, costs, and punitive damages. The suit further seeks injunctive and declaratory relief on behalf of all consumers similarly victimized by Defendants fraudulent, unfair, and unlawful business practices.

## II. JURISDICITION AND VENUE.

2. The jurisdiction of this court over the subject matter of this action is predicated in 28 U.S.C. 3 1331 and 1332. Venue is proper on 28 U.S.C. Section 1391.

## III. PARTIES.

3. Plaintiff Dennis A Graff (hereinafter "GRAFF") is and was at all times an attorney licensed in Illinois and California and a citizen of Illinois.

4. Defendant Ivari International, Inc. (hereinafter "IVARI, INC.") is a California corporation doing business in California with its principal place of business and registered agent located at 145 South Rodeo Drive, Beverly Hills, California 90210.

5. Defendant Edward Ivari is a resident of France who owns and operates Ivari International, Inc.

6. Defendant Amy Ivari is a resident of France who is married to Edward Ivari and is an owner of Ivari International, Inc.

7. Upon information and belief, Mohammad Ivari is one of several aliases used by Edward Ivari in the furtherance of various highly suspicious schemes and illegal operations in the United States, the Middle East, and elsewhere.

8. Plaintiff is ignorant of the true names and Capacities of Does 1 through 20, inclusive, and therefore sues said Defendants by fictitious names. Plaintiff will ask leave of court to amend this complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and

thereupon alleges that each of the defendants designated herein is responsible in some manner for the events referred to and caused the damages to Plaintiff and/or is responsible for said damages.

## IV. RELATIONSHIP AND LIABILITY OF DEFEDANTS

9. At all times herein mentioned, each Defendant was the agent, employee, partner, servant, and/or co-conspirator of the other Defendants, and in doing or aiding and abetting the partnership, and/or conspiracy and with the permission, knowledge, consent, solicitation, counseling, commanding, inducement, procurement, or ratification of the other Defendants. Each of the Defendants benefited from the actions of the other Defendants and/or the actions of themselves and willingly accepted the benefits derived from their actions or the actions of other Defendants. Defendants are jointly and severally, directly, vicariously, or derivatively liable for the actions committed by themselves or other Defendants. Each Defendant has been put on notice by the Plaintiff of the violations set forth in this complaint and has taken no action to correct or remedy the violations which occurred.

## V. FACTS COMMON TO ALL CLAIMS.

10. On or around October 2006 GRAFF contacted IVARI, INC. regarding their hair replacement systems. As a result of that contact, GRAFF received from IVARI, INC. a set of detailed brochures explaining the virtues of the IVARI, INC. hair replacement systems and setting forth its money back guarantee and warranties. A true and correct copy of the 33 page brochure containing the express warranties and guarantees with pagination added at the top of each page is attached as "Exhibit A".

11. In the brochures, IVARI, INC. makes a number of express warranties regarding their product and their money back guarantee, to wit:

a) On page 3, the brochure states, "Today, I proudly offer you a selection of techniques. They far surpass all currently available hair techniques in the world.";

b) On page 3, the brochure states, "I have devoted my life to finding the best solution for each clients needs";

c) On page 3, the brochure states " I have personally hand-picked and trained a capable and caring team of specialists, who have for many years delighted even the most demanding individuals from all over the world";

d) On page 13, the brochure states, " The patented Microcylinder technique is the ultimate answer to have beautiful hair.";

e) On page 13, the brochure states " The extraordinary procedure has proven successful regardless of the lack of volume or degree of hair loss";

f) On page 14, the brochure states "Ivari International has acquired 30 years of research and development to give you the natural healthy hair you have always wanted while still retaining the liberties you had with your original hair";

g) On page 14, the brochure states " Through these tiny cylinders, additional strands of natural hair are added until the desired effect is reached";

h) On page 14, the brochure states " the IVARI techniques are suitable for men and women regardless of the hair loss or the amount of hair desired";

i) On page 14, the brochure states " the additional hair is perfectly identical to the persons hair in terms of shade and texture; they mingle with your own hair and you quickly forget them";

j) On page 14, the brochure falsely depicts Edward Ivari is a doctor by showing a picture of him in a doctor's gown and mask performing surgery on a patient and proudly states "Reaffirming his genuine concern for his clients, Edward Ivari's most recent innovation, the INTRADERMIC MICROPOINTS. Surgically provide IVARI'S clients with additional hair";

k) On page 31of the brochure, the following guarantee is made:

> **The exclusive patented techniques of EDWARD IVARI represent the solution to all your hair problems. Celebrated by personalities looking for perfection, excellent results are guaranteed with both surgical and non-surgical treatments. Every intervention is a work of art.**

12. On or about November 7, 2006 GRAFF spoke with Edward Ivari regarding the hair replacement systems. During this conversation Edward IVARI represented the following to GRAFF:

a) He was a doctor who pioneered the field of hair replacement;

b) Surgical interventions were available and could be performed by him in California;

c) The microcylinder systems was patented and the best in the world;

d) Perfect and excellent results were guaranteed with a money back guarantee if GRAFF was not satisfied;

e) The cost would be $60,000 up front and 300 per month for upkeep;

f) Upkeep treatments would be needed no more than 4 to 8 times per year.

13. On November 14, 2006 GRAFF met with Edward Ivari at IVARI, INC. and was told the following:

a) That the photos provided by GRAFF would be achieved and he would look fabulous;

b) Excellent results were guaranteed with a money back guarantee;

c) That the total cost for the initial intervention would be $60,000;

d) That he was a doctor who pioneered the field of hair replacement;

e) That IVARI, INC. had never had a dissatisfied customer and never been sued by a customer;

7

Complaint

f) That they would select " the finest virgin hair in the world" and perfectly match GRAFF's hair in designing his hair replacement system";

g) That if GRAFF signed the contract and paid the $60,000 fee the entire hair replacement system would be done in one sitting on April 2007 by Dr. Ivari.

14. Based upon the representations in the brochure and by Edward IVARI, GRAFF signed an agreement to purchase the IVARI, INC. hair replacement system for $60,000. A true and correct copy of that agreement is attached as "Exhibit B."

15. After signing this agreement, GRAFF paid IVARI, INC. the sum of $60,000.

16. On April 23, 2008 EDWARD IVARI began the process of putting GRAFF's hair replacement system on his head. During the course of his work, EDWARD IVARI asked GRAFF if he would loan him $250,000 at 6% interest for his various "interests."

17. GRAFF advised IVARI he would not loan him any money as he had his own business to finance. At that point, EDWARD IVARI advised GRAFF he "would be unable to complete his work" and would complete only the top part.

18. Upon abruptly stopping completion of his work on April 2007, EDWARD IVARI left GRAFF with a grossly uneven product covering the top of his head only. EDWARD IVARI advised GRAFF he was unavailable till mid June to continue work on his product.

19. In June 2007, GRAFF appeared at IVARI, INC. to have his hair replacement system completed. During the course of this treatment EDWARD IVARI advised GRAFF he was temporarily hurting for money and wanted to borrow $500,000 at 18% interest. GRAFF told EDWARD IVARI he had no interest in loaning money to him since he had his own business to finance.

20. Upon being advised by GRAFF he would not loan him the $500,000, EDWARD IVARI advised GRAFF he did not have time to finish this hair replacement system but could finish it in July 2007.

21. In July of 2007 GRAFF appeared for his appointment at IVARI, INC. to have the hair replacement done. EDWARD IVARI advised GRAFF he lost millions of dollars in a Saudi Arabia deal", had actually been held in prison there for a year, and desperately needed to borrow $1,000,000 at 18% to be repaid in 6 months. When GRAFF declined to loan the money to him, EDWARD IVARI advised him he could not complete the work until September 2007,

22. On or about July 30, 2007 GRAFF received a call from Nazee at IVARI, INC. who informed him that he must pay $12,000 immediately to their office or "Dr. IVARI would not complete the work."

23. GRAFF advised Nazee he would not pay anymore since the agreement called for a total of $60,000, the work was not done as promised, and if they would not finish the job he wanted his money back.

24. In August 2007, GRAFF had the hair replacement system evaluated by other hair replacement experts. They described the product as substandard, a dead giveaway it was a hairpiece, not finished, and lacking in good quality. The experts

further advised GRAFF the hair used by IVARI, INC. was not "virgin hair" and was of very poor quality.

25. On August 31, 2007 GRAFF advised IVARI, INC. of the substandard quality of the product and requested that IVARI, INC. cure the defects when he came to his September 2007 appointment.

26. In September 2007 IVARI, INC. called and cancelled the scheduled appointment with GRAFF.

27. From the initial appointment in April 2007 to October 2007 the hair replacement system provided by IVARI, INC was left unfinished and looked horrible. Friends of GRAFF referred to it as a "ground hog", a "cheap piece of carpet", and "an unmade bed."

28. In October 2007 the hair replacement system completely fell apart and needed to be removed as it hung loosely on GRAFF's head.

29. On October 7, 2007 GRAFF wrote to IVARI, INC. and demanded a total refund of $60,000.

30. On October 8, 2007 GRAFF met with Amy Ivari at IVARI, INC. and returned the hair replacement system to her. Amy IVARI stated the following:

        a) The product was very poorly done and she was shocked at its quality;

    b) Ivari, Inc. would replace it without cost to GRAFF if he would give them "one more chance."

    c) If GRAFF was not satisfied with the replacement work he would be given a full refund of all moneys spent.

31. GRAFF agreed to give IVARI, INC. one last chance to deliver the product as promised and to refrain from suing them for a refund until they were given this last chance to cure the product defects. Amy Ivari agreed GRAFF's money would be refunded if the product was defective a second time.

32. On October 9, 10, and 11 2007 Amy Ivari finished the work on the new hair replacement system for GRAFF.

33. By November 2007 the system began falling apart again and GRAFF complained of this fact in letters dated November 13 and 14, 2007.

34. In November 2007, IVARI, INC. also tried to unilaterally raise the price of the follow up treatments by more than three times the original price quoted back verbally and in the written agreement. GRAFF refused to pay the unilateral raise in price.

35. In 2008, GRAFF visited IVARI, INC. approximately 10 times in an effort to fix the defects in the hair system. Ivari, Inc. failed and/or refused to correct the defects.

36. In January 2009, GRAFF complained once again that the product continued to fall apart in less than 2 weeks after each session and that the defects needed to be fixed.

37. In sessions in January and February 2009, both Nazee and Olga of Ivari, Inc. advised GRAFF the product had serious defects and needed to be completely redone. Olga further advised GRAFF EDWARD IVARI refused to authorize her to correct the defects.

38. In February 2009 GRAFF wrote to EDWARD IVARI and IVARI, INC. requesting an appointment to cure the defects be set up immediately. IVARI, INC. refused to cure the defects in the product.

39. In March and April 2009, GRAFF again made written demands on Edward Ivari and Ivari Inc. that the product defects identified by GRAFF, Nazee, and Olga of Ivari, Inc. be cured and corrected. IVARI, INC. refused and/or failed to do so.

40. On April 6, 2009 GRAFF sent to Edward, Amy, Mohammad, and Edward Ivari, as well as Ivari, Inc. the California Consumer Legal Remedies Act "30 day letter" demanding the product be corrected or GRAFF's money returned to him. IVARI, INC refused to schedule an appointment for the product to be fixed or replaced. A true and correct copy of this letter is attached as "Exhibit C."

41. On or about May 1, 2009 Amy Ivari spoke with GRAFF and advised him as follows:

> a) Ivari, Inc. would not make good on the product defect and had no obligation under the law to do so.

b) Ivari, Inc. had similar problems with clients in the past yet did not provide refunds or correct the defects in those cases since "you can't please everyone";

c) Ivari, Inc. had a free attorney and therefore it would cost them nothing to fight a lawsuit;

d) GRAFF would need to sue them to get anything from them.

42. Ivari, Inc. has to date taken no action to cure the defects in the product and had made no offer of a refund to GRAFF.

43. Since 2006, GRAFF has spent approximately $82,000 with IVARI, INC. relating to the defective hair replacement system.

44. As a direct and proximate cease of Defendants actions GRAFF has suffered actual damages in excess of $80,000, is entitled to recover attorneys fees and costs recoverable by both contract and statute, and is entitled to other damages including treble damages per statute, punitive damages, and interest at 10% per annum.

45. Plaintiff is informed and believes and upon such information and belief alleges that the Defendants have similarly victimized other clients and these practices have become a regular way of conducting business. Plaintiff has already uncovered the identities of additional victims of Defendants illegal and unethical business practices, and discovery has only begun. Plaintiff further has reason to believe Defendants are using the proceeds obtained through their illegal and unethical practices to fund illegal, unethical, and highly suspicious "activities" in foreign

countries. Plaintiff alleges further evidentiary support is likely after a reasonable opportunity for further investigation or discovery.

46. Pleadings upon information and belief in this Complaint, especially those allegations relating to injurious actions by Defendants against other clients, involve evidence which is necessary and is totally within the control of the defendants or third parties and discovery is necessary to obtain said evidence. Discovery has only recently begun in this case and further discovery is necessary for Plaintiff to be able to full present his case. Plaintiff alleges further evidentiary support of his claims is likely after a reasonable opportunity for further investigation or discovery.

## VI. CLAIMS FOR RELIEF.
### FIRST CLAIM FOR RELIEF
### (BREACH OF WRITTEN CONTRACT AGAINST IVARI, INC.)

47. GRAFF re-alleges and incorporates by reference Paragraphs 1 through 46.

48. On or about November 14, 2006, at Beverly Hills, Los Angeles, California, GRAFF and IVARI, INC. entered into a written contract a copy of which is attached as "Exhibit B" and made a part of this pleading.

49. GRAFF has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the contract.

50. Beginning on April 13, 2007 Plaintiff began repeatedly requesting Defendant IVARI, INC. perform their obligations under the contract.

51. Beginning on April 13, 2007 and continuing to the present Defendant IVARI, INC. breached the contract by refusing to deliver the hair replacement system promised to GRAFF and by refusing to refund his money as guaranteed.

52. As a result of Defendant IVARI, INC.'s breach of contract Plaintiff is damaged in the sum of $82,000, attorney fees and costs recoverable by contract, and other damages.

## SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT – CALIFORNIA COMMERCIAL CODE against IVARI, INC.)

53. GRAFF re-alleges and incorporates by retrieving Paragraphs 1 through 52.

54. Defendant IVARI, INC. is a merchant engaged in the manufacture, wholesale, and retail sale of goods (i.e. hair replacement systems) as defined by California Commercial Code Section 2104 (a).

55. On November 14, 2006, GRAFF and Defendant IVARI, INC. executed a contract for the purchase of goods. The contract, a true copy of which is attached as "Exhibit B" and incorporated by reference, provides for the sale by Defendant to Plaintiff of a hair replacement system for a price of $60,000.

56. Plaintiff fully performed all his obligations under the contract by paying Defendant IVARI, INC. the price of $60,000.

57. Immediately after partial delivery of the goods, GRAFF discovered substantial defects in the goods, which resulted in his inability to use the product as promised and for the purposes which they were purchased.

58. GRAFF repeatedly complained to the Defendant to repair the defects and deliver the product as promised.

59. Defendant acknowledged the defects, made attempts to cure the defects, acknowledged the attempts to cure the defects failed, and never cured the defects despite two (2) years of complaints by GRAFF.

60. Through a series of letters, GRAFF notified Defendant IVARI, INC. he was invoking his right to reject the goods on the basis the defendant failed to cure the defects.

61. GRAFF at all times believed that any defect or nonconformity in the goods would be seasonally cured pursuant to California Commercial Code Section 2607 (2).

62. The amount of money that GRAFF has paid Defendant IVARI, INC. for the goods including amount expended for unsuccessful efforts to cure the defects in the goods is $82,000. Thus, as a direct and proximate cause of defendant's breach, GRAFF has suffered damages of $82,000.

## THIRD CLAIM FOR RELIEF
### (BREACH OF EXPRESS WARRANTIES - CALIFORNIA COMMERICAL CODE 2313 AGAINST IVARI, INC. AND EDWARD IVARI)

63. GRAFF re-alleges and incorporates by reference Paragraphs 1 through 62.

64. On or about November 2006 at Beverly Hills, California plaintiff negotiated with Defendants IVARI, INC. and EDWARD IVARI for the purchase of a hair

replacement system. In the course of the negotiations, Defendants orally and in writing made warranties and guarantees set forth in Paragraphs 11 through 13 above and included in the brochure provided to GRAFF and attached as "Exhibit A." Those promises became part of the basis of the bargain between the parties and thus constituted express warranties which Defendants were bound to honor per California Commercial Code Section 2313.

65. Based on these warranties, GRAFF paid the sum of $60,000 for purchase of the hair replacement system from the Defendants IVARI, INC. and EDWARD IVARI.

66. Defendants breached their express warranties by failing to deliver the product as warranted, failing to cure the defects, and failing to honor their money back guarantee.

67. Plaintiff discovered these breaches of express warranties prior to complete performance by Defendants, repeatedly demanded they cure the defects, and repeatedly visited their offices in person to have the defects cured. Defendants failed to honor their express warranties in that they failed and refused to cure the defects or refund GRAFF's money as guaranteed.

68. As a direct and proximate result of Defendants breaches of their express warranties, GRAFF has been damaged in out of pocket expenses to the amount of $82,000 in actual damages, attorney fees and costs recoverable by contract, and other damages.

### FOURTH CLAIM FOR RELIEF

(VIOLATION OF THE CALIFORNIA SONG-BEVERLY WARRANTY ACT, CALIFORNIA CIVIL CODE 1790, et seq., AND WILLFUL BREACH OF EXPRESS WARRANTY AGAINST IVARI, INC. AND EDWARD IVARI)

69. GRAFF re-alleges and incorporates by reference Paragraphs 1 through 68.

70. GRAFF is a buyer as defined by California Civil Code Section 1791 (b).

71. Defendants IVARI, INC. and EDWARD IVARI are "manufacturers" and "sellers" as defined by California Civil Code Sections 1791 (i) and (e).

72. The hair replacement system sold and/or manufactured by Defendants IVARI, INC. and EDWARD IVARI are "consumer goods" as defined by California Civil Code 1791 (a).

73. On or about November 2006 at Beverly Hills, California GRAFF negotiated with Defendants IVARI, INC. and EDWARD IVARI to purchase a hair replacement system. In the course of negotiations, Defendants orally and in writing made warranties and guarantee set forth in paragraphs 11 to 13 above and included in the brochure provided to GRAFF attached as "Exhibit A." These promises became part of the basis of the bargain between the parties and thus constituted express warranties which Defendants were obligated to honor per California Civil Code Section 1791.2.

74. Based on these warranties, GRAFF paid the sum of $60,000 for purchase of the hair replacement system.

75. Defendants breached their express warranties by failing to deliver the product as promised, failing to cure the defects and failing to refund GRAFF his money as guaranteed.

76. Plaintiff discovered these breaches of express warranties prior to complete performance by Defendants, repeatedly demanded they cure the defects, and repeatedly visited their offices in person to have the defects cured. Defendants failed to honor their express warranties in that they failed and refused to cure the defects or refund GRAFF's money as guaranteed.

77. As a direct and proximate course of Defendants breaches of their express warranties, GRAFF has been damaged in the amount of $82,000 in actual damages, attorney fees and costs recoverable by contract and statute, and other damages.

78. The actions of Defendants IVARI, INC. and EDWARD IVARI constituted a willful failure to comply with the California Song – Beverly Warranty Act (Cal. Civ. Code 1790, et seq.) so as to justify on additional award of a civil penalty equal to two times the actual damages pursuant to California Civil Code 1794 (c) and/or (e)(i).

## FIFTH CLAIM FOR RELIEF
### (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER CALIFORNIA COMMERCIAL CODE 2314 AGAINST IVARI, INC.)

79. GRAFF re-alleges and incorporates by reference Paragraphs 1 through 78.

80. Defendants breached the implied warranty of merchantability of the goods sold to plaintiff in that the goods were not fit for the ordinary purposes they are used and did not meet the implied warranties from the course of dealing or trade as set forth in California Commercial Code sections 2314(2)(c) and (3).

81. As a result of Defendants Defendant's breach of the implied warranty of merchantability GRAFF did not receive the goods warranted to be merchantable.

82. As a direct and proximate cause of defendant's actions, GRAFF suffered actual damages of $82,000 attorney fees and costs recoverable by contract, and other damages.

## SIXTH CLAIM FOR RELIEF
### (BREACH OF THE IMPLIED WARRANTY OF THE MERCHANTABILITY UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT SECTIONS 1791.1, 1792 AND 1794 AGAINST IVARI, INC.)

83. GRAFF re-alleges and incorporates by reference Paragraphs 1 through 82.

84. In the sale of their goods to GRAFF, Defendant breached the implied warranty of merchantability as set forth in detail in paragraphs 80 through 82 above.

85. As a direct and proximate course of Defendants breaches of implied warranty of merchantability, GRAFF has been damaged in the amount of $82,000 in actual damages, attorney fees and costs recoverably by contract and statute, and other damages.

86. The defendants refused to correct the defects caused by their breach and refused to refund GRAFF his money and such refusal was willful so as to justify a treble damage award under California Civil Code 1794 (c) and/or (e)(i).

\\
\\
\\

## SEVENTH CLAIM FOR RELIEF

(BREACH OF THE IMPLIED WARRANTY OF FITNESS PER CALIFORNIA
CIVIL CODE 1790, et seq. AND CALIFORNIA COMMERCIAL CODE 2315
AGAINST IVARI, INC.)

87. GRAFF re-alleges and incorporates by reference Paragraphs 1 through 86.

88. In November 2006 GRAFF agreed to purchase a hair replacement system
warranted as the world's best hair replacement system and thereby warranted
GRAFF could wear it for that particular purpose.

89. At the time GRAFF purchased the hair replacement system, Defendant knew of
the purpose GRAFF purchased the goods for and knew of the high quality he
demanded since Defendant expressly warranted and guaranteed their work as set
forth in Paragraphs 11 through 13 above and on the brochure provided to GRAFF
attached as "Exhibit A". Plaintiff relied on Defendant's skill and expertise to
deliver the goods as promised so that there was an implied warranty they were fit
for these purposes.

90. Defendants breached the warranty implied at the time for sale by not providing
suitable goods fit for the particular purposes for which they were required.

91. Despite the repeated requests, Defendants failed to cure the defects in the
product so they complied with the implied warranty of fitness.

92. As a direct and proximate course of Defendants breaches of their express
warranties, GRAFF has been damaged in the amount of $82,000 in actual

damages, attorney fees and costs recoverably by contract and statute, and other damages.

93. The Defendants failure and refusal to comply with the implied warranty of fitness was willful so as to justify a treble damage award under California Civil Code 1794 (c) and/or (e)(i).

## EIGHTH CLAIM FOR RELIEF
### (BREACH OF THE MAGNUSON-MOSS –WARRANTY ACT, 15 U.S.C. 2310, AGAINST IVARI, INC.)

94. GRAFF re-alleges and incorporates by reference Paragraphs 1 through 93.

95. On or about November 2006, GRAFF negotiated with Defendants to purchase a hair replacement system. In the course of negotiations and to the time of sale alleged in the complaint, the product was disclosed to be accompanied by a writing which contained warranties and a money back "guarantee" if the product was not delivered as warranted and guaranteed. This writing became part of the basis of the bargain between the parties and thus constituted a written warranty made and given by Defendant. These writings are attached on "Exhibits A and B" and incorporated by reference herein.

96. On November 14, 2006 GRAFF purchased the hair replacement system from Defendant for $60,000 based on his belief Defendant IVARI, INC. would comply with all the written warranties contained in the brochure and written contract.

97. In April 2007, prior to full delivery of the product, GRAFF complained the product was not delivered as warranted and brought this defect to Defendants

attention. Defendant has refused to correct the defect or refund GRAFF's money as guaranteed.

98. The written warranty does not contain any reference to an informal dispute settlement mechanism. However, on or about April 16, 2009 GRAFF formally notified Defendant suit would be commenced unless Defendant cured the defects in the product. Defendant has refused all requests to cure the defect or refund his money per the money back guarantee.

99. As a proximate result of the Defendants failure to remedy the defective product or refund his money as guaranteed, GRAFF has suffered actual damages of $82,000 and other damages.

100. Plaintiff has incurred and is entitled to recover reasonable attorney fees, costs, and expenses in pursuing his remedies under 15 U.S.C. (d)(i) and (2).

## NINTH CLAIM FOR RELIEF

(VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE 1750, et seq. AGAINST IVARI, INC. AND EDWARD IVARI)

101. GRAFF re-alleges and incorporates by reference Paragraph 1 through 100.

102. Defendants were at all times relevant here governed by the California Consumer legal Remedies Act, California Civil Code 1750, et seq.

103. GRAFF is a "consumer" as defined by California Civil Code 1761 (d).

104. In making the representations and warranties specifically set forth in Paragraphs 11 through 13 above and continued in the written and brochure, Defendants engaged in unfair methods of competition and unfair or deceptive practices intended to or which result in a sale of lease of goods to GRAFF including, but not limited to:

a) Misrepresenting the affiliation, connection, sponsorship, approval, or certification of goods in violation of California Civil Code 1770 (a) (2);

b) Using deceptive representations in connection with goods or services in violation of California Civil Code 1770 (a) (4);

c) Representing goods or services have characteristics ingredients, uses or benefits they did not have in violation of California Civil Code 1770 (a) (5);

d) Representing goods original or new when they were altered, reconditioned, used, or secondhand in violation of California Civil Code 1770 (a) (6);

e) Representing goods or services are of a particular standard, quality, or grade or of a particular style or model when they are of another in violation of California Civil Code 1770 (a) (7);

f) Advertising goods or services with intent not to sell them as advertised in violation of California Civil Code 1770 (a) (9);

g) Representing that a transaction confers or involves rights, remedies, or obligations it does not have in violation of California Civil Code 1770 (a) (14).

105. On April 6, 2009 GRAFF sent required notice under California Civil Code Section 1782 notifying Defendants of their unlawful acts or practices with a demand for a refund by certified mail, return receipt requested, and by facsimile to Defendants principal place of business in Beverly Hills, California. A copy of this notice is attached as "Exhibit C" and incorporated by reference herein.

## TENTH CLAIM FOR RELIEF

(VIOLATION OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT, CALIFORNIA BUSINESS AND PROFESSIONS CODE 17200, et seq., AGAINST IVARI, INC, EDWARD IVARI, AMY IVARI, AND DOES 1 through 20)

106. GRAFF realleges and incorporates by reference Paragraphs 1 through 105.

107. Defendants were at all times relevant here governed by the applicable provisions of the California Business and Professions Code 17200 et seq.

108. The Defendants committed unlawful, unfair, or fraudulent business acts against GRAFF and the public at large as follows:

a) The Defendants engaged in UNLAWFUL business acts by violating the California Consumer Legal Remedies Act, the California Song-Beverly Warranty Act, the Federal Magnuson-Moss Warranty Act, the California Unfair Practices Act, the

California False Advertising Act, California Business and Professions Code 12024.6, the Federal Trade Commissions Act, and other statutes;

b) The Defendants engaged in UNFAIR business acts by violating the statutes set forth in Paragraphs 1081 (a), by defrauding GRAFF, and by refusing to honor their warranties, guarantees, and contractual obligations;

c) The Defendants engaged in ongoing and numerous acts of fraud in constituting FRAUDULENT business practices as set forth in GRAFF's claim for relief for fraud and deceit.

109. The above acts each constituted UNFAIR, UNLAWFUL, or FRAUDULENT business acts, and together constituted unfair business practices, which is unfair competition as defined by California Business and Professions Code § 17204.

110. Defendants acquired the funds from GRAFF by means of the act(s) and practice(s) of unfair competition alleged above.

111. To remedy these unfair business practices, Plaintiff seeks remedies authorized by Business and Professionals Code § 17203, including the following:

a) A declaration that Defendants disgorge any fees by reason of their unfair business acts or practices;

b) Restitution to Plaintiff of all moneys paid by GRAFF and Defendants totaling $82,000;

c) To impose a constructive trust over the $82,000 in funds held by defendants which we obtained from GRAFF;

d) Preliminary and final injunctive relief, placing those under the control of this Court pending final resolution;

e) Preliminary and final injunctive relief, ordering Defendants to cease and desist engaging in unfair business practices, and false advertising of the type committed against GRAFF and others.

## ELEVENTH CLAIM FOR RELIEF

(VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING ACT, CALIFORNIA BUSINESS AND PROFESSIONS CODE 17500, et seq. AGAINST IVAR, INC., EDWARD IVARI, Amy Ivari, and DOES 1 through 20)

112. GRAFF realleges and incorporates by reference Paragraphs 1 through 111.

113. Defendants EDWARD IVARI and AMY IVARI are "persons" as defined by California Business and Professions Code Sections 17,500 and 17,506.

114. Defendant IVARI, INC is a corporation and is a "person" as defined by California Business and Professionals Code Sections 17,500 and 17,506.

115. Defendants IVARI, INC. EDWARD IVARI, and AMY IVARI are now, and at all times mentioned in this complaint, engaged in the manufacture and sale of the hair replacement systems at 145 South Rodeo Drive, Beverly Hills, California.

116. Beginning at least as early as November 2006, and continuing to the date of this complaint, Defendants have conducted a campaign of advertising to the public consisting of magazine advertising, brochures, telephone sales, and other forms of advertising. A copy of the brochure disseminated to the public is attached as "Exhibit A" and incorporated by reference.

117. Defendants have made and disseminated this advertising with the intent directly or indirectly to induce the public to purchase hair replacement systems as described in this Complaint.

118. Defendants advertising was untrue and misleading and likely to deceive the public as set forth in this Complaint.

119. In making and disseminating this advertising Defendants knew, or by the exercise of reasonable care should have known, that the advertising was untrue or misleading.

120. GRAFF is informed and believes, and on the basis of that information and belief alleges, that, unless enjoined by this Court, Defendants will continue to engage in the untrue and misleading advertising alleged above.

121. As a direct and proximate result of the improper advertising described above, Defendants have received from GRAFF, and continue to hold the sum of $82,000.

122. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that as a direct and proximate result of the improper advertising

described above, Defendants have received from the general public and continue to hold substantial moneys.

## TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE CALIFORNIA FALSE ADVERTISING ACT,
CALIFORNIA BUSINESS AND PROFESSIONALS CODE 17,500, et seq.
through Fraud, Deceit, and Intentional Misrepresentation Against IVARI, INC.
EDWARD IVARI, AMY IVARI, and DOES 1 through 20).

123. GRAFF realleges and incorporates by reference Paragraphs 1 through 122.

124. Defendants made a series of representations through their advertising activities set forth in this Complaint and in particular in Paragraphs 11 through 13. These advertisements represented the hair replacement systems were the best in the world, that Edward Ivari was a doctor, that there was a money back guarantee, and other representations.

125. Defendants representations were false in that their hair replacement system is not of the quality promised, Edward Ivari is not a doctor, they never intended to honor the money back guarantee, and other representations made were not true.

126. Defendants made the misrepresentations with the specific intent to induce GRAFF to purchase a hair replacement system for $60,000.

127. On or about November 2006 GRAFF was provided a copy of Defendants advertising, read it, replied upon it as true, and purchased the hair replacement system for $60,000.

128. When defendants made the misrepresentation described in the Complaint, Defendants knew the representations were false.

129. Defendants made the misrepresentations described above with the intent to deceive GRAFF so as to justify an award of punitive damages.

130. As a direct and proximate cause of Defendants actions GRAFF spent a total of $82,000 on the hair replacement system and has suffered actual damages of $82,000.

## THIRTEENTH CLAIM FOR RELIEF

### (VIOLATION OF THE CALIFORNIA FALSE ADVERITISNG ACT, CALIFORNIA BUSINESS AND PROFESSIONS CODE 17500, et seq. through Negligent Misrepresentation by IVARI, INC. and EDWARD IVARI)

131. GRAFF realleges and incorporates by reference Paragraphs 1 through 130.

132. When the Defendants made the misrepresentation set forth in Paragraphs 11 through 13 and 124 Defendants had no reasonable grounds to believe them to be true.

133. As a direct and proximate result of the Defendants misrepresentation, GRAFF has suffered damages of $82,000.

## FOURTEENTH CLAIM FOR RELIEF

### (FRAUD AND DECEIT AGAINST IVARI, INC. AND EDWARD IVARI)

134. GRAFF realleges and incorporates by reference Paragraphs 1 through 133.

135. During the solicitation of GRAFF and for the purposes of inducing GRAFF to purchase a hair replacement system, Defendants engaged in acts of fraud and deceit per California Civil Code Sections 1572 and 1710 as set forth in this Complaint and in particular in Paragraphs 11 through 13 and 124.

136. In all of these instances where defendants made false representations, concealed matters, made false promises, or otherwise acted to deceive, in each instance, Defendants did so with the intention to deceive and defraud GRAFF to induce GRAFF to act in reliance thereon and purchase a hair replacement system, or with the expectation Plaintiff would so act, knowing such representations and other acts were false.

137. Plaintiff, at the time defendants made false representations, concealed matters, made false promises, or acted to deceive was ignorant of the fraud and deceit and believed the facts as presented by Defendants to be true and Plaintiff reasonably believed them to be true.

138. Had Plaintiff known the actual facts, he would not have taken the actions induced by the fraud and deceit and would not have purchased the hair replacement systems from Defendants.

139. As a proximate result of the actions of Defendants, GRAFF has sustained actual damages of $82,000, attorney fees and costs, and other damages.

140. Defendants conduct constituted acts of oppression, fraud, or malice so as to justify an award of punitive damages under California Civil Code § 3294.

## FIFTEENTH CLAIM FOR RELIEF

### (NEGLIGENT MISREPRESENTATION AGAINST IVAR, INC. AND EDWARD IVARI)

141. GRAFF realleges and incorporates by reference Paragraphs 1 through 140.

142. When the Defendants made the misrepresentations set forth in Paragraphs 11 through 13 and 124 Defendants had no reasonable grounds to believe them to be true.

143. As a direct and proximate result of Defendants misrepresentations, GRAFF has suffered damages of $82,000.

## SIXTEENTH CLAIM FOR RLEIEF

### (PROMISSORY ESTOPPEL against IVARI, INC., EDWARD IVARI, and AMY IVARI)

144. GRAFF realleges and incorporates by reference Paragraphs 1 through 143.

145. On multiple occasions between November 1 and November 14, 2006 Defendants made multiple representations and promises to GRAFF set forth in this Complaint and specifically in Paragraphs 11 through 13 and 124.

146. In doing so, Defendants knew or should have known GRAFF would be reasonably induced to rely on Defendants promises and representation.

32

Complaint

147. Plaintiff reasonably relied on Defendant's promises and representations and was induced to purchase a hair replacement system for $60,000.

148. Defendants have not performed the promises and representations made to GRAFF.

149. As a direct and proximate result of Defendant's failure to perform their promises and representations, GRAFF has suffered actual damages of $82,000.

150. Injustice can only be awarded by enforcing Defendants promises and representations completely.

## SEVENTEENTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT AGAINST IVARI, INC. and EDWARD IVARI)

151. GRAFF realleges and incorporates by reference Paragraphs 1 through 150.

152. In making the misrepresentations set forth in this Complaint and specifically in Paragraphs 11 through 13 and 124, the Defendants obtained the benefit of being paid $82,000 for a product not delivered as promised such that an injustice would result if Defendants were allowed to retain the $82,000 wrongfully obtained.

153. Allowing Defendants to retain their wrongfully obtained moneys totally $82,000 would unjustly enrich them at the expense of GRAFF.

154. A gross injustice can only be avoided by preventing Defendants from unjustly enriching themselves at GRAFF's expense.

## EIGHTEENTH CLAIM OF RELIEF
### (DECLARATORY RELIEF AGAINST ALL DEFENDANTS)

154. GRAFF realleges and incorporates by reference Paragraphs 1 through 154.

156. GRAFF desires a judicial declaration of his rights and the rights of consumers similarly victimized across California in Defendants actions as follows:

      a)  That all monies obtained from GRAFF by Defendants be returned to him;

      b)  That the contract between GRAFF and defendants is null and void;

      c)  That Defendants are ordered to cease and desist all false advertising including ceasing to distribute the brochure attached as "Exhibit A."

157. An actual controversy has arisen and now exists between GRAFF and Defendants regarding their respective rights and duties.

158. A judicial declaration is necessary and appropriate at this time.

## VII. PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Dennis Graff prays judgment against Defendants, and each of them as follows:

## FOR THE FIRST CLAIM FOR RELIEF

1. Compensation damages totaling $82,000;

2. Rescission of the November 14, 2006 contract;

3. Restitution in the amount of $82,000;

4. Reasonable attorney fees and costs per contract;

5. Prejudgment investment at 10% per annum from November 14, 2006 pursuant to California Civil Code Sections 3287 and 3289;

6. Such other and further relief as this Court deems appropriate.

## FOR THE SECOND CLAIM FOR RELIEF

1. Compensatory damages totaling $82,000;

2. Rescission of the November 14, 2006 contract;

3. Restitution in the amount of $82,000;

4. Reasonable attorney fees and costs per contract;

5. Prejudgment investment at 10% per annum from November 14, 2006 pursuant to California Civil Code Sections 3287 and 3289;

6. Such other and further relief as this Court deems appropriate.

## FOR THE THIRD CLAIM FOR RELIEF

1. For compensatory and consequential damages totaling $82,000;

2. Rescission of the November 14, 2006 contract;

3. Restitution in the amount of $82,000;

4. Reasonable attorney fees and costs per contract;

5. Prejudgment investment at 10% per annum from November 14, 2006 pursuant to California Civil Code Sections 3287 and 3289;

6. Such other and further relief as this Court deems appropriate.

## FOR THE FOURTH CLAIM FOR RELIEF

1. Compensatory and consequential damages totaling $82,000;

2. Rescission of the November 14, 2006 contract;

3. Restitution in the amount of $82,000;

4. Reasonable attorney fees and costs per contract and California Civil Code 1794 (d) and (e) (i);

5. Prejudgment investment at 10% per annum from November 14, 2006 pursuant to California Civil Code Sections 3287 and 3289;

6. A civil penalty equal to two (2) times the actual damages per California Civil Code 1794 (c) and (e) (i);

7. For such other and further relief on the court deems appropriate.

### FOR THE FIFTH CLAIM FOR RELIEF

1. For compensatory and consequential damages totaling $82,000;

2. Rescission of the November 14, 2006 contract;

3. Restitution in the amount of $82,000;

4. Reasonable attorney fees and costs per contract;

5. Prejudgment investment at 10% per annum from November 14, 2006 pursuant to California Civil Code Sections 3287 and 3289;

6. Such other and further relief as this Court deems appropriate.

### FOR THE SIXTH CLAIM FOR RELIEF

1. Compensatory and consequential damages to liability $82,000;

2. Rescission of the November 14, 2006 contract;

37

3.  Restitution in the amount of $82,000;

4.  Reasonable attorney fees and costs per contract and California Civil Code
    1794 (d) and (e) (i);

5.  Prejudgment investment at 10% per annum from November 14, 2006
    pursuant to California Civil Code Sections 3287 and 3289;

6.  A civil penalty equal to two (2) times the actual damages per California
    Civil Code 1794 (c) and (e) (i);

7.  For such other and further relief on the court deems appropriate.

## FOR THE SEVENTH CLAIM FOR RELIEF

1.  Compensatory and consequential damages to liability $82,000;

2.  Rescission of the November 14, 2006 contract;

3.  Restitution in the amount of $82,000;

4.  Reasonable attorney fees and costs per contract and California Civil Code
    1794 (d) and (e) (i);

5.  Prejudgment investment at 10% per annum from November 14, 2006
    pursuant to California Civil Code Sections 3287 and 3289;

6. A civil penalty equal to two (2) times the actual damages per California Civil Code 1794 (c) and (e) (i);

7. For such other and further relief on the court deems appropriate

## FOR THE EIGHTH CLAIM FOR RELIEF

1. For actual and consequential damages totaling $82000;

2. For reasonable attorney fees and costs per contract and 15 U.S.C. Section 2310 (d) (2);

3. For costs of suit;

4. For such other and further relief as the court deems appropriate.

## FOR THE NINTH CLAIM FOR RELIEF

1. Actual damages relating to the false or misleading representations or promises to in the amount of $113,333.33;

2. Exemplary damages in an amount to be determined by the court to be reasonable as authorized by Section 1780 (a) (4) and/or 3294 (a) of the California Civil Code;

3. Prejudgment interest of 10% per annum on damages set forth above from November 14, 2006 pursuant to California Civil Code §§ 3288 and 3289;

4. A preliminary injunction, creating a constructive trust over the $82,000 wrongfully obtained and detained by Defendants in violation of the Consumer Legal Rights Act, plus 10% interest from September 15, 2000;

5. An order enjoining such methods, acts, or practices;

6. Attorney fees as allowed by California civil Code § 1780 (e) and California Code of Civil Procedures § 1025.5;

## FOR THE TENTH CLAI M FOR RELIEF

1. A preliminary injunction, creating a constructive trust over the monies acquired or withheld by means of the unfair competition totaling $82,000;

2. A final judgment ordering restitution to Plaintiff of all of the proceeds of the Mercedes award acquired or withheld by Defendants through means of the unfair competition, in the amount of $82,000;

3. An order enjoining such unfair business practices or acts;

4. Interest at the rate of 10% per annum on the money acquired or withheld by means of the unfair competition since September 21, 2000 pursuant to California Civil Code §§ 3287 and 3289;

5. Attorneys fees as allowed by California Code of Civil Procedure § 1021.5;

\\
\\
\\
\\

## FOR THE ELEVENTH CLAIM FOR RELIEF

1. An order requiring defendants to show cause why they should not be enjoined, as set forth below, during the pendency of this trial;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining and enjoining defendants and their agents, servants, and employees, from making , disseminated, before the public in California, nationwide, or both, in any newspaper or other publication, or any advertising device, by public outcry or proclamation, or in any other manner or means;

   a) Any statement concerning their hair replacement systems, or concerning any circumstance or matter of fact connected with the product which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading, and;

   b) Any such statement made or disseminated as part of a plan or scheme with the intent not to sell the hair replacement systems as advertised.

3. Restitution to GRAFF totaling $82,000;

4. Cash of suit and reasonable attorney fees pursuant to contract and California Code of Civil Procedure 121.5;

5. Such further relief as this Court deems proper:

## FOR THE TWELFTH CLAIM FOR RELIEF

1. An order requiring defendants to show cause why they should not be enjoined, as set forth below, during the pendency of this trial;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining and enjoining defendants and their agents, servants, and employees, from making , disseminated, before the public in California, nationwide, or both, in any newspaper or other publication, or any advertising device, by public outcry or proclamation, or in any other manner or means;

   a) Any statement concerning their hair replacement systems, or concerning any circumstance or matter of fact connected with the product which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading, and;

   b) Any such statement made or disseminated as part of a plan or scheme with the intent not to sell the hair replacement systems as advertised.

3. Restitution to GRAFF totaling $82,000;

4. Cash of suit and reasonable attorney fees pursuant to contract and California Code of Civil Procedure 121.5;

Complaint

5. Punitive or exemplary damages;

6. Such further relief as this court deems proper.

## FOR THE THIRTEENTH CLAIM FOR RELIEF

1. An order requiring defendants to show cause why they should not be enjoined, as set forth below, during the pendency of this trial;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining and enjoining defendants and their agents, servants, and employees, from making , disseminated, before the public in California, nationwide, or both, in any newspaper or other publication, or any advertising device, by public outcry or proclamation, or in any other manner or means;

> a) Any statement concerning their hair replacement systems, or concerning any circumstance or matter of fact connected with the product which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading, and;

> b) Any such statement made or disseminated as part of a plan or scheme with the intent not to sell the hair replacement systems as advertised.

3. Restitution to GRAFF totaling $82,000;

4. Cash of suit and reasonable attorney fees pursuant to contract and California Code of Civil Procedure 1021.5;

5. Such further relief as this Court deems proper:

## FOR THE FOURTEENTH CLAIM FOR RELIEF

1. Compensatory damages totaling $82,000;

2. Punitive or exemplary damages in an amount to be determined;

3. Costs of suit and reasonable attorney fees per contract;

4. Any further relief this court deems appropriate.

## FOR THE FIFTEENTH CLAIM FOR RELIEF

1. Compensatory damages totaling $82,000;

2. Costs of suit and reasonable attorney fees per contract;

3. Any further relief this Court deems appropriate.

\\
\\
\\

## FOR THE SIXTEENTH CLAIM FOR RELIEF

1. An order requiring Defendants to honor their promises made to Defendants regarding the money back guarantee;

2. Actual damage of $82,000;

3. Costs and attorney fees;

4. Any further relief this court deems appropriate.

## FOR THE SEVENTEENTH CLAIM FOR RELIEF

1. An order finding Defendants would be unjustly enriched if not ordered to return $82,000 to GRAFF;

2. Such other and further relief as this court deems appropriate.

## FOR THE EIGHTEENTH CLAIM FOR RELIEF

An Order declaring:

    a) That all monies obtained from GRAFF by Defendants be returned to him;

    b) That the contract between GRAFF and the defendants is null and void;

c) That Defendants are ordered to cease and desist all false advertising including ceasing to distribute the brochures attached as "Exhibit A."

Dated June 30, 2009                          By _____

Frank F. O'Kane, Jr.
Attorney for Plaintiff
Dennis Graff

## VIII. DEMAND FOR JURY TRIAL.

Plaintiff Dennis Graff hereby demands a jury trial as provided by Rule 38 (a) of the Federal Rules of Civil Procedure.

By _____

Frank J. O'Kane, Jr.
Attorney for Plaintiff
Dennis Graff



# PRESENTATION

I would like to thank you for your interest in the IVARI techniques. About thirty years of experience working with my clients has taught me a great deal about their individual needs, desires and concerns.

I have devoted my life to finding the best solution for each client's needs, and have taken special care in assuring that their privacy is always honored.

Today, I proudly offer you a selection of my techniques. They far surpass all currently available hair techniques in the world. To perform these procedures, I have personally hand-picked and trained a capable and caring team of specialists, who have for many years delighted even the most demanding individuals from all over the world.

This brochure should answer most of your questions. However, in order for us to study your personal case and determine the appropriate procedure, an examination of your hair and scalp is essential.

If your schedule does not permit you to travel to one of our Centers, we would be pleased to meet you at any location worldwide that is convenient for you.





- Henle's Layer of Inner Root Sheath
- Cuticle of Inner Root Sheath
- Huxley's Layer of inner Root Sheath
- Sebaceous Gland
- Medulla
- Hair Cortex
- Bulge
- Outer Root Sheath
- Macrophages
- Vitreous Membrane
- Keratogenous Zone
- Prekeratogenous Zone
- Melanocytes
- Papilla Cells
- Dermal Papilla
- Papilla Pore

... section
    ermanent
    Transient
    Hair Bulb



1
2
3

The gross section of hair
    The cuticle
    The Cortex
    The Medulla



# THE HAIR

A strand of hair is the visible part above the skin and the deeper segment under the scalp known as the root. Composed of three layers, each strand has a diameter of 70-100 microns.

THE CUTICLE is the external layer of a strand of hair which is formed of hardened protective cells. It is without pigment and arranged much like the shingles on a roof, intertwined and overlapping. These thick cells collectively give the hair its texture.

THE CORTEX is under the scalp and directly related to the hair volume. The fibrous cells of the cortex contain keratin (the principle ingredient in hair), and melanin (the pigment that gives hair its color).

THE MEDULLA is the innermost center, composing 0 to 10% of the volume. In the case of very fine hair, the medulla is absent.

THE ROOT is the living part of the hair anchored in the scalp. At the tip of the root, a slightly larger area known as the bulb bears a thick, whitish appearance when one plucks a strand of hair.

THE PAPILLA is the curved and empty area at the base of the bulb. It connects the hair to the head. Here, the blood vessels and nerves meet and the hair receives its nourishment.

# THE HAIR CYCLE

Depending on a variety of factors, the amount of hair one has varies from individual to individual. It is generally estimated at 100,000 to 150,000 strands. The hair cycle begins every 2 to 6 years with an average of 3 years. It is programmed genetically and has three phases:



1          2          3

THE **ANAGEN PHASE** or the growth phase, during which the hair grows about 1cm per month.

THE **CATAGEN PHASE** a short transitional phase lasting an average of three weeks. This completes the active formation of the hair and the bulb.

**THE TELOGEN PHASE** the dormant phase occurs when the bulb reaches maturity. The keratin filled bulb emerges from the papilla and surrounds itself with a chain of cells known as sealing sack.

## EXTERNAL AGENTS

Damage to the hair can be self inflicted either by intentional or unintentional means. Some people going through stress continuously pull at their hair until it comes out. Styling hair by bleaching, braiding and straightening can also cause damage and results in hairloss.

### Trichotillomania or Hair Pulling

Some children and less often adults play with their hair by pulling or twisting it. This can be part of a behavioral problem or a bad habit that is often done unconsciously. If the behavior is not stopped, permanent hairloss can result from the constant stress on the hair. It is best to seek the help of a mental health professional to solve this problem.

### Hair Styling Treatments

Many people change the appearance of their hair by using chemical treatments like dyes, tints, bleaches, straighteners, relaxers and permanent waves. If correctly done using reputable products, it is rare to have any damage. However, hair can become weak and break if any of these chemicals are used too often. Hair can also break if the solution is left on for too long, if two procedures are done on the same day, or if bleach is applied to previously bleached hair. Some chemical relaxers do contain powerful chemicals and there have been instances of people who got chemical burns from these products resulting in permanent hairloss. Only go to qualified hair stylists and if doing it yourself make sure you only use reputable products and follow the product directions.

### High fever, severe infection, severe flu

Sometimes, one to three months after a high fever, severe infection or flu, a person may experience hairloss, this is

reverses itself within a few months but people who have a severe chronic illness may shed hair indefinitely. A relatively unknown fact is that hair transplantation surgery can actually cause additional hairloss or "shock



# MICRO-CAPILLOGRAPHY

Is the scientific investigation of the etiology of hair loss. It involves an in-depth questionnaire covering your history and a microscopic analysis of the hair roots. The procedure requires taking samples of the hair from four regions of the head, the parietal, the right and the left occipital, and the frontal.



**Hair deformation**
1 - The tonsorial
2 - Frontal region
3 - The right occipital
4 - The left occipital



**Hair deformation**
1 - Damaged anagen phase
   with poorly conserved.
2 - Cases of alopecia
   or baldness.
3 - An atypical telogen phase.
4 - A damaged telogen phase.

These tests determine with precision any deficiency of amino acids (protein element of keratin) and minerals (particulary sulphur) as well as trace elements. They will also indicate the ratio of hairloss to daily hair growth, a finding that is necessary in investigating problems associated with hairloss.

Based on the results, IVARI specialists can recommend the appropriate course of treatment. The IVARI treatment products differ from others in that they are customized and used according to etiology.

# PATENDED PROCEDURE :

13



## THE ADVANTAGES OF MICROCYLINDERS

The technologically-advanced Microcylinder technique offers immediate results with 100% natural hair. If a more gradual approach is prefered, progressive sessions can be scheduled for you.

This meticulous procedure is undertaken according to the needs of each client. Hair can be thickened, short hair may be lengthened, and balding areas can be recovered. Through the use of Microcylinders, additional hair is added to your own hair recreating the natural look of your hair to its original and full-body shape.

To fulfill your desires, we provide you in advance a choice of color, thickness, texture and length.

This extraordinary procedure has proven successful regardless of the lack of volume or degree of hairloss.

This intervention on the frontal and tonsorial regions can be performed in a single session lasting about 10 hours.

## THE PLACING OF MICROCYLINDERS

### THE SINGLE SESSION

The microcylinder procedure considers the density of the existing hair surrounding the area to be reconstituted. It requires a minimum of 10 hours to complete.

### THE PROGRESSIVE SESSIONS

These sessions are spread over several months to give the appearance of more gradual change.

This 100% natural-look result which is free from any side effect, has earned IVARI's Microcylinder technique its worldwide fame and admiration.

## MICROCYLINDERS

The patented Microcylinder technique is the ultimate answer to have beautiful hair. Microcylinder completely eliminates any need for a surgical procedure.

Our specialist will design a plan in accordance with your existing hair and draw it to create the density and the style you desire. The microcylinders are then positioned at the base of the chosen hair in the designated vascularized area. Through these microcylinders, additional human hair is affixed. Therefore, they are linked to each other, from one microcylinder to next, until the desired hair thickness is obtained.



**Ivari International** has acquired 30 years of research and development to give you the natural healthy hair you have always wanted while still retaining the liberties you had with your original hair. The Microcylinder Technique is just one of the patented inventions available at Ivari centers. Through these tiny cylinders, additionnal strands of natural hair are added until the desired effect is reached (without surgery). The final result leaves you free to swim, shower and brush as often as you wish without concern. The Ivari Techniques are suitable for both men and women regardless of hairloss or the amount of hair desired. Your privacy and confidentiality requirements are protected with all Ivari services and correspondence.



# THE MICROCYLINDERS A REAL REVOLUTION IN THE HAIR FIELD

The IVARi Laboratories combine the best hair specialists who have oriented their work and research towards the knowledge of physiological problems related to the life and renewal of hair.

The additional hair is perfectly identical to the person's initial hair in terms of shade and texture; they mingle with your own hair and you quickly "forget them".

The great advantage of this meticulous intervention is to leave the patient with the choice of density depending on age, physiognomy, while taking into consideration the thickness of the existing hair in the crown area, and of course the person's will.

No other indication: you can wash them as frequently as desired, brush them vigorously, massage your scalp freely. Everything is allowed, even to change your hairstyle and colour.

The price for this intervention is calculated according to the quality of hair and the surface to be covered.

If you wish to regain your full hair in one session, this is possible. For those who want to remain discreet and prefer to play the natural effect, they can choose the progressive sessions (5 to 6 times over a few months).



## MALE ALOPECIA

The most severe form of baldness occurs at about the age 30, it normally begins with a sudden hairloss around 17-18 years of age and lasts for three to four months. This condition usually affects several hundred hairs a day mostly on a hyper-seborrheic and at times oily scalp. New finer, thinner and shorter hair eventually replace those that were lost. The different stages of this loss are explained below following Hamilton classification. (simplified by Rook)

**Stage 1:**

Systematic hairloss in the temporal frontal area. Not to be confused with homogenous receding of the frontal hair-line which occurs at puberty in majority of boys and girls, and has absolutely no effect on the state of the hair.



**Stage 2:**

Aggravation of the "clearing" of turfs of hair in the interior frontal zone in addition to clearing of the vertex. (crow)



**Stage 3:**

These two zones tend to move towards each other in the direction of the vertex.



**Stage 4:**

Baldness has set in. The hair temp-oro-occipital area remains, giving the look of a high crown around the bald surface.



**Stage 5:**

This is the low crown, it ressembles stage 4 but the crown is narrower and lower.





# FEMALE ALOPECIA

Hairloss must be differentiated from the "physiologic deflurium" which occurs in the 40s. It is less frequent in women than in men and also less sharply concentrated. The key advantage of this process is the flexibility it gives in choosing the desired hair texture and volume suitable for your age and facial appearance while taking into account the density of the hair at the crown level and also respecting your personal preferences.

The following are the three stages of female vertex with hairloss as outlined in Ludwig's classification:

**Stage 1:** Moderate hairloss in the vertex with a widening of the part.



**Stage2:** Distinct hairloss occuring about one centimeter from the hairline.



**Stage3:** Almost complete vertex hairloss.



The Microcylinder Technique is a true solution to hair loss. It reconstitutes hair to its natural volume with beautiful results. The technique is incomparable to any other hairloss treatment currently available anywhere.



... go around on about the all-too familiar problems associated with thin and unmanageable hair that can make one prematurely look ten years older. After battling my own poor hair conditions for years, I finally decided to take control of the situation. I said to myself "After all hair is the most beautiful gift given to women, why shouldn't I have it ?". I then proceeded to make several appointments with hair specialists including the world-renowned Edward Ivari. At my consultation session with Mr Ivari, he very patiently listened to my anxieties then examined my scalp and told me that there was a solution to my problems, the microcylinders which would give me natural  and thick head of hair in a few hours time. He went on to reassure me that the procedure would require neither surgery nor anesthesia. We set a date for the procedure and I showed up at his center with my heart pounding !

Mr Ivari was there to greet me with a warm smile that gave me the confidence I badly needed. Later as he worked on my head, I watched the reconstitution of my hair in the mirror before me, "It was magic!" I couldn't believe it.

I am writing this letter for all the women who are unhappy as I once was. I want to give testimony to the unique talent of the specialists at Ivari Centers and to my own long-sought happiness. Happiness is often within reach, it is sad not to take it !



I must admit since I decided on the Microcylinder treatment, my life has improved drastically.

With my new hair, I have regained confidence in my private and professional life. In a successful interpersonal relationship today, one's "look" is the key ingredient. In my own case, my new hair has made me feel vibrant and energetic, the people I needed to feel more at ease with like my friends and colleagues.

It is worth noting that this spectacular result is solely due to the meticulous work by the Ivari center team. The technical craftsmen worked tirelessly until the optimum aesthetic result was achieved.

After all isn't it that the secret of perfection ? I will conclude this letter by saying that I finally found happiness and self-esteem thanks to the talents of Edward IVARI.





The statistics speak for themselves, 65% of men and 45% of women will face the critical problem of hairloss at some point in their lives. Ivari Centers can help prevent the tragic effects of hairloss.

Microcapillogaphy and microcylinders can give you the joy of always having a full head of hair along with the pleasure of running your fingers through it. Style it as you wish, color, curl, highlight your 100% natural hair. The freedom is yours.





# MICROWEAVE

A UNIQUE PROCESS WHICH ALLOWS TO RECONSTITUTE THE HAIR FROM A PRINT.

A perfectly adjusted method, incredibly light, that will allow you to lead an active and sporty life without restraint. First of all, hair samples will be taken in order to measure precisely the thickness, the color, the texture of your hair as many steps which are essential to select hair perfectly similar to your replacement.

The print of the area to be treated will be taken according to your hairstyle. The basis is made of an extremely fine pattern, well spaced out in order to allow the scalp to breathe. Then the 100% natural additional hair are fixed in a spiral, carefully following a meticulous sketch (fixing time requires about 3 hours), to give a perfectly natural looking result.

It does not move, and proof was given as a 5kg weight was hung to the hair of a volunteer. The additional hair is guaranteed for 3 years, and you can wash it daily, color, or cut it, provided that you treat it with care.

## CHEMOSOFT

Hairloss constitutes an attack on the whole body of patients under chemotherapy. Felt as a loss of identity, alopecia is often lived in distress, therefore, the body image must be kept or rapidly restored, in order to allow the patient to accept more serenely a heavy but vital therapy.

In order to allow a discreet transaction, the hair reconstitution is advised before the appearance of the side effects due to the treatment.

We have the possibility to use the patient's hair for the reconstitution of his new hair while adapting the density and fixing progressively during the treatment.

## MICROEXTENSION

DENSER AND LONGER HAIR
WITHOUT DAMAGING THEM.

The advantages of the microextensions are the following: a process which goes unnoticed, the fineness of the shades, the reduced care and the holding quality beyond reproach.

Perfectly adapted to the hair desires of both men and women, this gives you back longer and denser hair without glue or clip, while respecting every existing hair



## ULTRA MICRO TRANSPLANT

**Quick, efficient, discreet.**
Real technology revolution with a perfect result without stitches.

The mastery of the transplant technique by very specialized doctors allow to regain a suitable density according to the baldness evolution.

The micro-swab of the bulb is a revolutionary technique allowing an immediate transplant where you wish. It can be applied to men and women, very discreetly, and is realized under local anesthesia.

During an implant session, the patient's hair is taken from the back of the head to be reinserted on the bald areas of the scalp.

Only doctors with a specific training and a strong experience of micro-swab practice at the international IVARI Centers.

## FLAP SURGERY

There are four different types of flaps used for the correction of alopecia: temporo-parieto-occipital flaps, lateral scalp flaps, long and short temporal vertical flaps, and microsurgical free scalp flaps.

These techniques involve cutting and lifting bands of hair scalp of approximately 20cm-long and positioning them onto bald area. Flap surgery is an efficient method for treating extensive types of baldness. This is because every single available donor hair of the patient's can be used to produce the end result.

However, there are serious disadvantages to this procedure which should be carefully considered. For example, in Juri flaps, the hair within them is always directed posteriorly which is contrary to the normal hair direction seen in 99% of patients.

The hair direction also results in complete exposure of the anterior line scar and hairline, and nearly always appears too dense and coarse to look natural.

## SCALP REDUCTION

Standard Alopecia Reduction technique involves the excision of an area of alopecia (scalp). The size of the area that can be excised depends on two factors:
- The degree of natural scalp laxity
- The extent of surgical undermining different studies.











# PARIS

The original home of the IVARI Center in PARIS
provides future clients with preliminary hair
and scalp examinations and important information
about IVARI's innovative techniques.
The interventions are then realized in our centers.

Monday-Thursday
9:30 am – 7:00 pm
Friday and Saturday
9:30 am – 6h00 pm





## IVARI

26 Place Vendôme
75001 Paris, FRANCE
Tel.: 33 (1) 42 86 82 00
Fax: 33 (1) 42 60 09 33
ivari@ivari.fr



# BEVERLY HILLS

The word of IVARI's success in Europe quickly spreads overseas, and heavy demand for his techniques prompts the opening of the first IVARI Center on Rodeo Drive in BEVERLY HILLS.

Monday-Friday
9:00 am - 6:00 pm



**IVARI**

145 South Rodeo Drive
Beverly Hills California 90210 - USA

Tel. 1 (310) 274 1515
Fax: 1 (310) 274 7525



# NEW YORK



Following the continued success and the ever increasing demand for IVARI techniques EDWARD IVARI creates the prestigious IVARI Center in NEW YORK CITY.

Monday-Friday
9:00 am – 6:00 pm





**IVARI**

The Trump Tower
725 5th Avenue 25th Floor
New York NY 10022 - USA
Tel. 1 (212) 755 4555
Fax: 1 (212) 755 4445





The exclusive patented techniques of Edward IVARI represent the solution to all your hair problems. Celebrated by personalities looking for perfection, excellent results are guaranteed with both surgical and non-surgical treatments. Every intervention is a work of art.

In order to answer the needs of an international clientele, every detail has been studied in terms of research, preparation, welcome and clients comfort.

Different services are at your disposal from your airline ticket reservation, hotel room to the airport welcome. We do our best to make your stay as agreeable as possible in the cities where the intervention centers are situated.

Our hostesses are at your disposal and will inform you on the clientele services.





**IVARI**

**Centre International Capillaire**
PARIS   BEVERLY HILLS   NEW YORK

Last Name: GRAFF

First Name: DENNIS

Address: 2104 Colony Plaza   Newport Beach, CA   92660

Telephone: 949-706-1448   Date of Birth: 3/5/54

Hair Texture: as sample   Hair Color: Dark Brown

Date of Last Consultation: 11, 14, 06   Date of Intervention: 3 month

Total Cost: 6.0,000   Deposit: 2 0,000

Balance: 4 0,000

We are very happy and proud to include you among our clients. Ivari International Inc., offers you over thirty six years of research and experience in its development of a technical and esthetic intervention procedure to answer the demands of an international clientele not satisfied with other available techniques.

As was fully demonstrated and described to you during your consultation, our patented non-surgical Microcylinder procedure consists of an even distribution of donor hair on your scalp. During the Consultation hair samples are taken from different sections of your scalp to determine the type, quality, and color of your donor hair. On the same day, you may request any special modifications or variations. On the day of your intervention, the specialist in collaborations with you will design an individualized hair reconstitution plan. The procedure begins by affixing and flattening the Microcylinders at the base of your existing hair near the scalp. Then additional hair, which was previously prepared by integrating together individual strands of hair, is distributed according to your individualized plan. In order to secure your donor hair and achieve the best results and resistance, intricate conditions are created along the lines of the additional hair. If you wish and for an additional cost, our patented procedure may be performed progressively, in several sessions spanning a few months. The date of intervention is agreed upon by you depending on Center's availability. Once your intervention date has been set and you desire to reschedule your intervention, you must notify the Center where the intervention will be performed at least three weeks prior to the intervention date, as the intervention specialist and intervention cabin are scheduled well in advance. Otherwise, we will be forced to charge you our fee for a full intervention day. Howe ever, in order to achieve optimum results, we may need to reschedule your intervention in the event of technical delays which may affect your intervention. In such event, we will notify you one week prior to your scheduled intervention.

After your intervention and depending on the rate of your hair growth, we recommend an adjustment of the Microcylinders, approximately 4 to 8 times per year, which may be performed at any of our Centers for a separate cost. Of course we may arrange for one of our technicians to come to any location you may desire at an additional cost for required adjustments.

On the day of your consultation, we require a non-refundable deposit of one-third of the cost of your intervention in order to prepare the donor hair for your intervention. At least 30 days prior to your intervention date, we require an additional non-refundable amount of one-third of the cost of your intervention. The remaining balance must be paid by a non-refundable certified check, cashier's check or in cash on the day of your intervention. This agreement is non-cancelable. For over 36 years, Ivari International Centers have been committed to providing our clients with the very finest hair reconstitution procedures available in the world.

However, to protect you and the company in the event a dispute arises under the terms of this agreement, the prevailing party shall be entitled to interest, cost, expenses and reasonable attorney's fees.

The French patented Ivari Procedures are available exclusively at each of the Ivari Centers under patent Nos. 8717005 and 8804802.

YOUR SIGNATURE BELOW ACKNOWLEDGES THAT YOU UNDERSTAND THE NATURE OF THE PATENTED MICROCYLINDER PROCEDURE, THAT YOU HAVE READ AND UNDERSTAND THIS AGREEMENT, AND THAT YOU AGREE TO THE TERMS AND CONDITIONS CONTAINED HEREIN.

Date: 11, 14, 06

Client's signature:

*Ivari International, Inc.*
*145 South Rodeo Drive . Beverly Hills . California 90210*
*Telephone 310 . 274 . 1515   Facsimile 310 . 274 . 7525*

THE DENNIS GRAFF LEGAL GROUP
620 NEWPORT CENTER DRIVE, SUITE 1100
NEWPORT BEACH, CA 92660
1-866-GRAFFLAW • 1-888-472-3852
www.DennisGraffLaw.com

April 6, 2009

Ivari International, Inc.
145 S. Rodeo Drive
Beverly Hills, CA 90210

To: Ivari International, Inc.
    Edward Ivari
    Amy Ivari
    Mohammed Ali Ivari

Dir Sir:

Despite my multiple pleas and your own staff's; acknowledgement the hair system provided to me was defective, you have repeatedly failed and refused to cure the defect and deliver the product as promised. Since you wont even return my phone calls, this letter includes California Civil Code 1760, et seq "30-day notice" of suit and demand for refund of all moneys spent. Unless we amicably resolve this matter within said 30 days, I will proceed to file suit in California Court for breach of contract, violation of the California Consumer Legal Remedies Act, fraud, and a variety of other causes of action. Please note as a prevailing plaintiff I am entitled to recover all actual damages, attorney fees, expert fees, costs, and punitive damages. We will also seek relief under the California Unfair Business Practices Act and pursue all administrative remedies available.

If you have a settlement to propose, I urge you to do it within the 30 day time frame as I will not wait beyond that time frame and will proceed directly to file suit.

Sincerely,

Dennis Graff

Cc: Frank Okane, esquire

"C"

THE DENNIS GRAFF LEGAL GROUP
620 NEWPORT CENTER DRIVE, SUITE 1100
NEWPORT BEACH, CA 92660
1-888-GRAFFLAW • 1-888-472-3352
www.DennisGraffLaw.com

April 6, 2009

## VIA CERTIFIED AND EXPRESS MAIL

Mohammed Ali Ivari
Ivari International, Inc
145 S. Rodeo Drive
Beverly Hills, CA
90210

Amy Ivari
Ivari International, Inc
145 S. Rodeo Drive
Beverly Hills, CA
90210

Edward Ivari
Ivari International, Inc
145 S. Rodeo Drive
Beverly Hills, CA
90210

vari International, Inc
145 S. Rodeo Drive
3everly Hills, CA
90210

## NOTICE OF VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT AND DEMAND FOR REMEDY

TO: Ivari International, Inc
     Edward Ivari
     Amy Ivari
     Mohammed Ali Ivari

You are hereby notified that on or about November 14, 2006 and at all times since through April 2, 2009, in carrying out the terms of Transaction you entered into with Dennis Graff, namely your representations regarding hair replacement systems and your failure to perform as promised, you violated the provisions of the California Consumer Legal Remedies Act Sections 1770 (a),(2), (4), (5),(6) , (7), (8), (9), (10), (13), (14), and (16) by failing to deliver goods or service as promised, warranted, or represented. Demand is hereby made that you correct your violation by reimbursing Mr. Graff for all moneys spent with your office, all damages incurred by Mr. Graff, and all future damages within 30 days after receipt of this notice.

Dated: April 6, 2009

Respectfully submitted,

Dennis A. Graff
The Dennis Graff Legal Group
620 Newport Center Drive, 11th Floor
Newport Beach, CA 92660

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

### CV09- 4900 RSWL (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

FRANK J. O'KANE, JR. SBN 137370
THE O'KANE LAW FIRM
16030 Ventura Blvd., Suite 510
Encino, CA 91436
Tele: 818-501-6100
Fax: 818-501-6104

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS A. GRAFF<br><br>PLAINTIFF(S)<br>v.<br>IVARI INTERNATIONAL, INC., EDWARD IVARI, AMY IVARI, DOES 1 through 10<br><br>DEFENDANT(S). | CASE NUMBER<br>**CV09-04900** RSWL (ANx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): Ivari International, Inc., Edward Ivari, Amy Ivari, Does 1 through 20

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Frank J. O'Kane, Jr. _____, whose address is 16030 Ventura Blvd., Suite 510, Encino, CA 91436 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    JUL - 8 2009

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS



UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| DENNIS A. GRAFF | IVARI INTERNATIONAL, INC., EDWARD IVARI, AMY IVARI, DOES 1 through 10 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Frank J. O'Kane, Jr.   SBN 137370     Tele; 818-501-6160<br>The O'Kane Law Firm<br>16050 Ventura Blvd., Suite 510, Encino, CA 91436 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND: ☑ Yes  ☐ No** (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:  ☐ Yes  ☑ No**      ☑ **MONEY DEMANDED IN COMPLAINT: $ 82,000.00**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Magnuson-Moss Warranty Act, 15 U.S.C. 2310; Defendants sold products with warranties that were breached.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | | |

FOR OFFICE USE ONLY:   Case Number:     **CV09 - 04900**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES  ORANGE | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ 𝘰          Date June 29, 2009

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |